# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

FILED
OCT 02 2009
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

—oOo—

UNITED STATES OF AMERICA

v.

SALOMON RODRIGUEZ
(aka Rafael Antonio Cabrera Torres, aka Jose)
~~[redacted]~~
Selma, California 93662

**CRIMINAL COMPLAINT**

CASE NUMBER: 1:09 MJ 00247 DLB

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. On or about April 23, 2009 through October 2, 2009, defendant Salomon RODRIGUEZ, in the Eastern District of California, did

knowingly produce, transfer, and possess with intent to use five or more false identification documents,
knowingly produce, transfer, and possess a document making implement, and
knowingly forge, alter, and falsely make a visa, permit, immigration document, and other document, and
conspire to commit an offense against the United States, and defraud the United States

all in violation of Title 18, United States Code, Sections 1028(a)(1), (a)(2), (a)(3), and (a)(5), 1546(a), and 371.

I further state that I am a Special Agent of U.S. Immigration and Customs Enforcement and that this complaint is based on the following facts:

See attached Affidavit of Special Agent Craig Finley

Continued on the attached sheet and made a part hereof. [Y]

_____
Signature of Complainant   Craig Finley
ICE Special Agent

Sworn to before me and subscribed in my presence on

10/2/2009                        at      Fresno, California
Date                                     City and State

Dennis L. Beck, U.S. Magistrate Judge
Name and Title of Judicial Officer        Signature of Judicial Officer

A F F I D A V I T

I, Craig Finley, being duly sworn, depose and state:

1. I am a Special Agent with the Department of Homeland Security, United States Immigration and Customs Enforcement (ICE), presently assigned to the Office of the Resident Agent in Charge, Fresno, California (RAC/Fresno). I have been employed as an ICE Special Agent (SA) for over six years. As part of my daily duties as an ICE agent, I investigate criminal violations in cases against persons involved in the possession, transfer, and manufacturing of fraudulent government identification documents. I have had formal and informal training in the detection of fraudulent documents. I am a graduate of the Federal Law Enforcement Training Center's Criminal Investigator Training Program and the United States Border Patrol Academy. During the course of my duties, I have participated in and have been the investigating officer for cases involving the possession, transfer, and manufacturing of fraudulent government documents.

2. I make this Affidavit based in part on personal knowledge gathered during my participation in this investigation, conversations with other officers, and in part, upon information and belief. This Affidavit is being submitted for the purpose of securing a complaint and arrest warrant for SALOMON RODRIGUEZ based on the charges below. I have not set forth every fact learned during the course of the investigation, nor do I request that this Court rely upon any facts not set forth herein in reviewing this Affidavit. The sources of my information and belief are:

    a. Personal review of records and documents;
    b. Independent investigation by ICE; and
    c. Consultation with representatives of ICE and other authorities.

**CRIMINAL VIOLATIONS**

1

3. As set forth more fully below, I have probable cause to believe that Salomon RODRIGUEZ (aka Rafael Antonio Torres Cabrera; aka Jose) has violated the following statutes and that a complaint and warrant should be issued for his arrest:

   a. 18 U.S.C. 1028(a)(1), (a)(2), (a)(3), and (a)(5) (Fraud and related activity in connection with identification documents);
   b. 18 U.S.C. § 1546(a) (Fraud and misuse of visas, permits, and other documents); and
   c. 18, U.S.C. § 371 (Conspiracy to commit offense or to defraud United States.

### FACTS ESTABLISHING PROBABLE CAUSE

4. Confidential Informant #1 (CI#1) has been working with ICE for approximately thirty (30) months. CI#1 was not legally in the United States and was given an employment authorization document by ICE. CI#1 has no criminal history. CI#1 was utilized in transaction one.

5. Confidential Informant #2 (CI#2) has been working with ICE for over eighteen (18) months. CI#2 was not legally in the United States and was given an employment authorization document by ICE. CI#2 has no criminal history. CI#2 was utilized in transaction one.

6. Confidential Informant #3 (CI#3) has been working with ICE for approximately twenty four (24) years. CI#3 was not legally in the United States and was given an employment authorization document by ICE. CI#3 had a prior conviction for drug sales, which was expunged. CI#3 was utilized in transaction two.

7. Confidential Informant #4 (CI#4) has been working with ICE for over six (6) years. CI#4 was not legally in the United States and was given an employment authorization document by ICE. CI#4 has a conviction for driving under the influence of alcohol. CI#4 was utilized in transaction two.

8. On or about January 26, 2009, your Affiant received

information that an individual using the name Jose and telephone number (559) 331-2847 was manufacturing and distributing fraudulent permanent resident cards, social security cards, and other documents. Your Affiant issued a subpoena to Verizon requesting subscriber information relating to telephone number (559) 331-2847. According to Verizon records, the current customer for telephone number (559) 331-2847, was Solomon Rodriguez, 152 W. Prospedety, Tulare, CA 93277. Your Affiant conducted an Internet search of the address and determined that Prospedety was in fact Prosperity Avenue in Tulare, CA. Verizon further informed your Affiant that the subscriber utilized a prepaid account not requiring a credit card, meaning the information might not be accurate.

     9. On or about February 17, 2009, CI#1 was instructed by your Affiant to call (559) 331-2847 and to ask for a person named Jose in an attempt to verify if he sold fraudulent immigration documents as had been reported to the Fresno ICE Office. Jose answered the phone, and CI#1 asked Jose if he sold "micas" (hereinafter referred to as micas).[1] Jose said yes and told CI#1 the process: he would go to the location of the person wanting to buy documents and then take the person's photo and biographical data (e.g., name, date of birth, country of birth, etc.). He would leave and then return to the location with the fraudulent documents. Jose said the whole transaction would take approximately an hour and a half. Jose told CI#1 that a mica would cost ninety dollars ($90). Jose said that if CI#1 were to purchase two additional sets, he could sell them for eighty dollars ($80) per set. This conversation was monitored

---

[1] Based on my knowledge, training and experience, a "mica" is an immigration document – generally a United States resident alien card or permanent resident card – which helps establish an alien's eligibility for employment and satisfy employer Form I-9 employee screening obligations. Fraudulent document vendors generally sell a set of fraudulent documents consisting of a resident alien card and social security card.

by your Affiant and ICE Special Agent Dada Cheam.

## TRANSACTION #1

10. On or about April 23, 2009, at approximately 1202 hours, CI#1 placed a consensually monitored telephone call to Jose at (559) 331-2847 to inquire about purchasing micas. A female answered the telephone and CI#1 asked for Jose. The female gave the telephone to a man named Jose. CI#1 asked Jose if he could make micas for three people. Jose said it would be eighty dollars ($80) each and that it would take about two (2) hours after he took their photographs. CI#1 told Jose that the three individuals were at the Wal-Mart in Tulare, California. Jose said his wife would go over to the Wal-Mart and take their photographs. She would be driving a white Mitsubishi. This conversation was electronically monitored and recorded by your Affiant and ICE Special Agent Juan Fletes.

11. On or about April 23, 2009, at approximately 1208 hours, SA Dada Cheam was conducting surveillance at 152 West Prosperity Avenue, Tulare, California 93274, the address provided by Solomon Rodriguez to Verizon, and saw a heavy set female with blonde hair get into a gray 2001 Saturn bearing California license plate 6FXJ999 ("the gray 2001 Saturn") and leave the residence. Also located at the residence was a white 1999 Mitsubishi bearing California license plate 6ASJ129, a black 2001 convertible Ford Mustang bearing California license plate 5TSF227, and a white 1991 Chevy pickup truck bearing California license plate 4G60152. At approximately 1211 hours, the female telephoned CI#1 to let CI#1 know she was at the Tulare Wal-Mart. The female got out of the gray 2001 Saturn. She was greeted by CI#1, CI#2, and undercover ICE Special Agent (SA) Juan Fletes. The female was looking for a place to take photographs of the three individuals. SA Fletes, acting in undercover capacity, asked how much she was going to charge and the female said her husband told them $80. CI#2 asked if she made identification cards and the female said they made everything including Mexican

licenses. The CIs asked the female if the identification cards worked with the police. The female told the three individuals that, "There's some that do, I'm not going to lie, but there's some that don't." The female took the photographs of CI#1, CI#2, and SA Fletes with a camera and obtained the biographical data to be used for the fraudulent documents. The female stated that her husband worked in the Tulare, California area and she worked towards the Selma, California area. While taking the biographical data from CI#1, CI#2, and SA Fletes, the female told the three individuals that each set (permanent resident card and social security card) were eighty ($80) dollars per set. The female told the three individuals it would take about an hour and a half to make the documents and that she would call them when she was on her way. Agents followed the female when she left the parking lot. The conversation during the above transaction was electronically monitored and recorded by ICE Resident Agent in Charge (RAC) Brian Poulsen.

12. On or about April 23, 2009, at approximately 1230 hours, the female drove away from the Tulare Wal-Mart in the gray 2001 Saturn and was followed by surveillance units back to the residence at 152 West Prosperity Avenue, Tulare, California 93274. The female was observed going into the residence with what appeared to be nothing in her hands. Within a few minutes, an adult male, later identified as Salomon RODRIGUEZ (aka Jose) exited the residence and got into the gray 2001 Saturn. Agents followed the Saturn to 21570 Road 68 #A, Tulare, California 93274. RODRIGUEZ sat in his vehicle outside the residence for approximately ten (10) minutes until a white 1996 Toyota bearing California license plate 6BBJ106 pulled up and an adult male exited the vehicle. RODRIGUEZ and the other man entered the Road 68 residence together. Agents maintained constant surveillance on the location. Approximately forty-five (45) minutes later both men exited the residence and drove towards the Tulare Wal-Mart. RODRIGUEZ called CI#1 to say he would arrive at the Wal-

Mart within five (5) minutes.

13.  On April 23, 2009, at approximately 1400 hours, RODRIGUEZ met CI#1, CI#2, and SA Fletes at the Panda Express in Tulare, CA. RODRIGUEZ sold to each CI#1, CI#2, and SA Fletes a separate set consisting of a fraudulent mica and social security card. CI#1, CI#2, and SA Fletes each paid RODRIGUEZ eighty dollars ($80) for their respective sets. RODRIGUEZ also provided his business card to each individual. The business card was colored like the Mexican flag. Around the symbol on the Mexican flag read "Trabajos De Computadoras" and "Fotografia Digital", with the name "Jose", telephone number (559) 331-2847, and Tulare-Visalia. After RODRIGUEZ was paid, he returned to the gray 2001 Saturn and drove away. The conversation during the delivery of the fraudulent documents by RODRIGUEZ to CI#1, CI#2, and SA Fletes was electronically monitored by your Affiant and ICE Special Agent Ulises Soloric.

14.  On or about April 23, 2009, your Affiant collected and examined the three sets of fraudulent resident alien cards and social security cards purchased from RODRIGUEZ. Based on my prior training, experience, and investigations, it is my conclusion that the cards were computer generated. The photos were scanned on the resident alien cards, and the font and official emblems were made with the use of a computer. The print and coloring on the social security cards also reflect the use of a computer, typewriter, scanner and printer.

15.  On May 12, 2009, your Affiant, ICE Special Agent Jerry Kracher, and RAC Brian Poulsen conducted a trash run at 152 West Prosperity Avenue, Tulare, CA 93274, the residence of Salomon RODRIGUEZ and Veronica CAPITAINE. Your Affiant searched through the trash collected and discovered an Aladin Bail Bonds statement pertaining to Veronica CAPITAINE, 152 West Prosperity, Tulare, CA for a bond executed on January 8, 2009, in Los Angeles, CA. Your Affiant conducted a search of the California Department of Justice CAL-Photo Image Network using the name Veronica CAPITAINE

and discovered booking photographs. The photographs appeared to be of the same female who took photographs and biographical data of the two CIs and ICE special agent on April 23, 2009. Your Affiant searched ICE indices using the name Veronica CAPITAINE and date of birth of 02/XX/19XX. Your Affiant discovered that Veronica CAPITAINE was granted voluntary returns from the United States to Mexico on two separate occasions. On October 13, 2005, CAPITAINE used the name Veronica CAPITAINE-Rosales, DOB: 02/XX/19XX, A98 385 XXX, when she was granted a voluntary return to Mexico. On October 16, 2009, CAPITAINE used the name Marina CAMPOS-Gutierrez, DOB: 02/XX/19XX, A98 385 XXX, when she was granted a voluntary return to Mexcio.

16. On or about June 10, 2009, your Affiant requested drivers' license photos for Veronica CAPITAINE and discovered that CAPITAINE applied for two separate California drivers' license/identification cards under the names Veronica CAPITAINE, (California drivers' license/identification number D403XXXX) and Elmire Nieves Rivera (E225XXXX). Your affiant concluded that the drivers' license photos matched the individual involved in the fraudulent document transaction on April 23, 2009, and booking photograph above. California Department of Motor Vehicle Investigator Javier Galindo informed your Affiant that CAPITAINE applied for a California drivers' license/identification card using a Puerto Rican birth certificate with the name Elmire Nieves Rivera. Investigator Galindo stated that CAPITAINE and RODRIGUEZ were allegedly married and that RODRIGUEZ applied for two separate California drivers' license/identification cards using the names Salomon RODRIGUEZ (A871XXXX) and Rafael Antonio Torres Cabrera (E134XXXX). SA Fletes, who purchased fraudulent documents from "Jose" on April 23, 2009, informed your Affiant that Salomon RODRIGUEZ, Rafael Antonio Torres Cabrera, and "Jose" appeared to be the same person.

17. On or about June 10, 2009, your Affiant contacted Department of State, Diplomatic Security Service (DSS) Special

Agent Rebecca Gillespie concerning Salomon RODRIGUEZ. SA Gillespie informed your Affiant that the Department of State was interested in contacting Salomon RODRIGUEZ regarding a United States Passport application under the name of Rafael Antonio Torres Cabrera and a Puerto Rican birth certificate. SA Gillespie provided your Affiant with a photograph from Cabrera's passport application. The photograph from the Cabrera's application matched the description of "Jose", the same person who manufactured and sold fraudulent micas and social security cards on April 23, 2009.

## TRANSACTION #2

18. On or about June 10, 2009, at approximately 1101 hours, ICE Special Agent Ulises Solorio, acting in undercover capacity, placed a consensually monitored telephone call to Jose at (559) 331-2847 and asked to purchase micas. Jose said he sold micas. SA Solorio told Jose he wanted the micas made that day. Jose said that he would call SA Solorio back in about two hours. This conversation was electronically monitored and recorded by your Affiant.

19. On or about June 10, 2009, at approximately 1130 hours, ICE Special Agent John Simmons was conducting surveillance at 152 West Prosperity Avenue, Tulare, CA and noticed an adult male and adult female exit the residence and get into the gray 2001 Saturn bearing California license plate 6FXJ999. SA Simmons informed your Affiant that the male and female appeared to be the same individuals who produced and sold the fraudulent resident alien cards and social security cards in transaction #1 above. SA Simmons was also conducting surveillance during transaction #1 and saw both individuals during that transaction. SA Simmons further informed your Affiant that he saw a "For Rent" sign posted at 152 W. Prosperity Ave., Tulare, CA 93274.

20. On or about June 10, 2009, at approximately 1323 hours, SA Solorio placed a consensually monitored telephone call to Jose at (559) 331-2847. Jose stated he was on his way to Selma,

California from Visalia, California and would meet Solorio at the Selma Wal-Mart in twenty (20) minutes. At approximately 1354 hours, your Affiant noticed the gray 2001 Saturn enter the Selma Wal-Mart parking lot. At approximately 1355 hours, Jose called SA Solorio to say that he had arrived. Jose met SA Solorio, CI#3 and CI#4 and took their biographical data and photographs. Your Affiant videotaped Jose taking photos and data. Your Affiant and other agents confirmed Jose was the same individual who produced and sold fraudulent documents to SA Fletes, CI#1 and CI#2 on April 23, 2009. Furthermore your Affiant and other agents believed that Jose matched the photographs for Salomon RODRIGUEZ and Rafael Antonio Torres Cabrera. Jose informed SA Solorio, CI#3, and CI#4 that he would give them a call when the documents were ready. This transaction was electronically monitored by RAC Brian Poulsen and recorded.

21. At this time, Jose returned to the same gray 2001 Saturn. The vehicle would not start and Jose entered the Wal-Mart. SA John Simmons followed Jose into the Wal-Mart and informed other agents by phone that Jose was purchasing a can of gas. Jose put the gas in his car, but the car would not start. SA Solorio was leaving the Wal-Mart parking lot and saw Jose walking down the street.

22. On June 10, 2009, at approximately 1448 hours, SA Solorio placed a consensually monitored telephone call to Jose, (559) 331-2847, to ask Jose if he needed a ride. Jose informed SA Solorio that he needed a ride to his home in Selma, CA, because his car ran out of gas. Jose added that he had just moved to Selma, CA. SA Solorio dropped off Jose at the Economy Market located on the corner of Nebraska Avenue and Thompson Avenue in Selma, CA. This conversation was electronically monitored and recorded by RAC Poulsen. Agents then followed Jose as he went on foot to 2459 Park Street, Apartment 102, Selma, CA. Agents maintained surveillance on the location.

23. On June 10, 2009, at approximately 1555 hours, agents

9

observed Jose leaving 2459 Park Street, Apartment 102, Selma, CA. Agents followed Jose, who walked back to the same Economy Market. At approximately 1558 hours, Jose called SA Solorio to let him know the documents were ready. SA Solorio told Jose that he was at the park on Nebraska Avenue. Surveillance units followed Jose walking to the park on Nebraska Avenue where SA Solorio, CI#3, and CI#4 were waiting. Jose sold separate fraudulent permanent resident cards and social security cards to SA Solorio, CI#3, and CI#4. Jose told the three individuals that he would give SA Solorio a ten dollar discount and charge a total of two hundred sixty dollars ($260) for all three sets of cards if they gave him a ride back to his car. CI#3 and CI#4 each gave Jose ninety dollars ($90) for their respective sets. SA Solorio paid eighty dollars ($80), after the ten dollar discount for giving Jose a ride back to his car. During the ride, Jose said that he had four (4) offices which were located in Tulare, Selma, Fresno, and Merced. Jose added that he could also make Mexican identification cards and drivers' licenses. This transaction was electronically monitored by RAC Brian Poulsen and recorded.

24. On or about June 10, 2009, your Affiant collected and examined the three sets of fraudulent resident alien and social security cards purchased from Jose. Based on my prior training, experience, and investigations, it is my conclusion that the cards were computer generated. The photos were scanned on the resident alien cards, and the font and official emblems were made with the use of a computer. The print and coloring on the social security cards also reflect the use of a computer, typewriter, scanner and printer.

### TRANSACTION #3

25. On or about June 24, 2009, SA Finley and SA Cheam drove by 152 W. Prosperity Avenue, Tulare, CA. At approximately 1516 hours, the agents spotted a white Chevy pickup truck bearing California license plate 4G60152 backed up near the front door of the residence. The vehicle was registered to Jose Alberto

Cruzcampos, 152 W. Prosperity Ave, Tulare, CA. The bed of the vehicle was loaded with household items including what appeared to be a queen size mattress on top of the other items.

26. On June 30, 2009, at approximately 0810 hours SA Finley drove by 2459 Park St., Selma, CA and noticed a white Chevy pickup truck bearing California plate 4G60152, parked in Space #102. SA Finley also noticed a gray Saturn bearing California plate 6FXJ999 parked in an unmarked space at the address. Space #102 is located directly south of the door to Apartment 102, where Jose manufactured counterfeit documents on June 10, 2009.

27. On or about July 1, 2009, at approximately 1107 hours, ICE Special Agent William Yoakum, acting in undercover capacity, placed a consensually monitored telephone call to Jose at (559) 331-2847 and asked to purchase micas. Jose picked up the phone and said he sold micas. SA Yoakum told Jose he was in Tulare, CA. Jose told SA Yoakum to call him back in twenty (20) minutes. This conversation was electronically monitored and recorded by SA Juan Fletes.

28. On or about July 1, 2009, at approximately 1130 hours, SA Yoakum placed a consensually monitored telephone call to Jose at (559) 331-2847. Jose told SA Yoakum he would be at the Wal-Mart in Tulare in five (5) minutes. Within five (5) minutes, a white 1991 Chevy pickup truck bearing California license plate 4G60152 pulled in next to SA Yoakum and DSS Special Agent Eddie Rey at the Tulare Wal-Mart parking lot. Your Affiant videotaped Jose, SA Yoakum, and SA Rey as Jose took their photographs and biographical data. SA Rey asked Jose if he could make a California drivers' license or identification card, and Jose told him he could make a California identification card. Jose told the agents that he would charge them two hundred forty dollars ($240) for the two micas, two social security cards, and one California identification card. This transaction was electronically monitored by SA Juan Fletes. At approximately 1148 hours, Jose returned to his pickup truck and departed the

Tulare Wal-Mart. Agents followed Jose leaving the Tulare Wal-Mart to 2459 Park Street, Apartment 102, Selma, CA. Agents maintained constant surveillance of Jose.

29. On July 1, 2009, at approximately 1219 hours, Jose entered 2459 Park Street, Apartment 102, Selma, CA. While conducting surveillance on the apartment, SA John Simmons noticed Jose exit the apartment to put a bird cage on an air conditioning unit right outside his front door. Jose also went to his pickup truck and then returned to Apartment 102.

30. On July 1, 2009, at approximately 1343 hours, agents observed Jose leave 2459 Park Street, Apartment 102, Selma, CA, in the same 1991 Chevy pickup truck. Agents followed Jose to the Tulare Wal-Mart. At approximately 1348 hours, Jose called SA Yoakum to let him know that he would be at the Wal-Mart in twenty (20) minutes. At approximately 1410 hours, Jose arrived at the Tulare Wal-Mart while under constant surveillance. Jose sold SA Yoakum and SA Rey two permanent resident cards, two social security cards, and a California identification card. The agents paid Jose two hundred forty dollars ($240). At approximately 1419 hours, Jose got into his pickup truck and left the area. This transaction was videotaped by your Affiant and electronically monitored by SA Juan Fletes.

31. On or about July 1, 2009, your Affiant collected and examined the two sets of fraudulent resident alien and social security cards purchased from Jose. Based on my prior training, experience, and investigations, it is my conclusion that the cards were computer generated. The photos were scanned on the resident alien cards, and the font and official emblems were made with the use of a computer. The print and coloring on the social security cards also reflect the use of a computer, typewriter, scanner and printer.

32. On July 2, 2009, at approximately 1510 hours, Special Agent Ulises Solorio made a consensually monitored telephone call to Jose at (559) 331-2847, to inquire about purchasing micas for

friends who lived in Atwater, CA. Jose told SA Solorio that he only worked in the Selma, CA area. The telephone call ended. The telephone call was monitored and recorded by your Affiant.

## CONCLUSION

Based on the foregoing facts as well as my knowledge, training and experience, I believe that probable cause exists for the issuance of a complaint and warrant for the arrest of Salomon RODRIGUEZ (aka Rafael Antonio Torres Cabrera; aka Jose) for violations of 18 U.S.C. §§ 1028(a)(1), (a)(2), (a)(3) and (a)(5) (Fraud and related activity in connection with identification documents), 18 U.S.C. § 1546(a) (Fraud and misuse of visas, permits, and other documents), and 18, U.S.C. § 371 (Conspiracy to commit offense or to defraud the United States). Wherefore, I respectfully request the issuance of a complaint and arrest warrant for the charges outlined above.

_____
Craig A. Finley.
Special Agent
Immigration and Customs Enforcement
United States Department of Homeland Security


Subscribed and sworn before me this __2__ day of October, 2009, at Fresno, California.

_____
DENNIS L. BECK
UNITED STATES MAGISTRATE JUDGE
Eastern District of California